COURT OF APPEALS
DECISION
DATED AND FILED

October 20, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1943-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF3982

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BENJAMIN FRANKLIN HOOKS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Benjamin Franklin Hooks appeals the judgment of conviction, following guilty pleas, to one count of human trafficking, one count of being a felon in possession of a firearm, and one count of human trafficking as a party to a crime. Hooks argues that evidence obtained from a police search of the home in which he was residing should have been suppressed. Specifically, Hooks contends that police used information obtained from an unlawful entry to obtain homeowner consent to conduct a search of the residence. We disagree and affirm.

## BACKGROUND

¶2 On August 29, 2017, Hooks was charged with multiple crimes and ultimately pled guilty to three: human trafficking, felon in possession of a firearm, and human trafficking as a party to a crime. According to the complaint, and as relevant to this appeal, on March 18, 2017, J.W. flagged down Milwaukee Police Officer Phillip Lewis and told Lewis that he had been robbed at gunpoint at the home located at 6050 North 40th Street, Milwaukee. J.W. told Lewis that he went to the home to meet an escort, but shortly after arriving, he was robbed by two individuals, one of whom was wearing a black ski mask. The masked individual, later identified as Hooks, pointed a gun at J.W. and told another individual to search J.W.'s pockets. The individual took J.W.'s keys, cash, and J.W.'s cell phone from his pockets. Hooks also took J.W.'s shoes.

¶3 When additional officers arrived on the scene, they entered the home two separate times without a warrant—once to remove the suspects from the home and once to search the home after obtaining homeowner consent. During the search, officers found J.W.'s shoes, cash in the denominations J.W. reported as stolen, a ski mask, and a firearm. Hooks filed a motion to suppress the evidence arguing that it was obtained as a result of illegal, warrantless police entries.

¶4 At a hearing on the motion, Officer James Luckett testified that on March 18, 2017, he responded to an armed robbery call at 6050 North 40th Street. Luckett testified that he was informed that he and other officers on the scene would be searching for an armed robbery suspect. Luckett testified that he and the other officers remained on the scene for approximately thirty minutes and did not see anyone enter or leave the home. Luckett testified that the officers knocked on the door, which then became slightly ajar, before announcing themselves and entering the home. Luckett stated that they "cleared" the residence, meaning once the officers entered the home, they removed the individuals inside, including Hooks.

¶5 Police Officer Jerome Battles testified that after officers removed the suspects from the residence, he spoke with M.M.D., the owner of the residence, to obtain consent to search the home. Battles testified that he learned from another officer that a firearm was in the home and that he conveyed this information to M.M.D. M.M.D. told Battles that she did not allow firearms in her home and that she wanted it removed. M.M.D. subsequently signed a consent form, granting officers consent to search the home in its entirety. Battles further testified that several items were recovered from the search.

¶6 Police Officer Phillip Lewis stated that he began searching the residence after he was informed that the residence was cleared and that the homeowner granted consent to search. Lewis testified that he started his search in the northeast bedroom—the room where Hooks was staying—and found cash, a ski mask, J.W.'s identification, and a firearm. Lewis also testified that he called J.W.'s cell phone and heard ringing coming from the attic. Lewis then opened a ceiling staircase leading to the attic and found the cell phone.

¶7      The circuit court granted the bulk of Hooks's suppression motion. The circuit court found that the initial warrantless entry of the home, which resulted in the removal of the suspects from the home, was unlawful because there were no exigent circumstances warranting the officers' entry. The circuit court noted that the officers did not notice anyone enter or leave the home and that the officers waited approximately thirty minutes before entering the residence and removing the suspects. The circuit court also found that while the second entry and subsequent search were done pursuant to the homeowner's consent, the consent did not lawfully extend to Hooks's bedroom. Therefore, the circuit court suppressed the gun, the ski mask, J.W.'s identification, and money that police found in the bedroom. Because J.W.'s cell phone and cell phone case were found in a common area of the home, which the homeowner lawfully allowed the police to search, the circuit court declined to suppress these items.

¶8      As stated, Hooks pled guilty to three charges. The remaining charges were either dismissed or dismissed and read in at sentencing.

¶9      The circuit court sentenced Hooks to a total term of fifteen years' initial confinement to be followed by ten years' extended supervision. This appeal follows.

## DISCUSSION

¶10     Prior to discussing Hooks's argument on appeal, we note that the State reframes the issue on appeal as whether we should "affirm the judgment of conviction because the exception to the guilty plea waiver rule in WIS. STAT. § 971.31(10) is inapplicable when the evidence that Hooks asks this court to

4

suppress is not relevant to the charges to which he pleaded guilty[.]"[1] Specifically, the State contends that the evidence Hooks complains of—J.W.'s cell phone and cell phone case—were relevant to the armed robbery charge, which was dismissed. In other words, the State contends that the evidence is not relevant to the crimes to which Hooks pled guilty.

¶11 "Ordinarily, a guilty plea waives all non-jurisdictional defects and defenses." *State v. Hampton*, 2010 WI App 169, ¶23, 330 Wis. 2d 531, 793 N.W.2d 901. However, "[a] narrowly crafted exception to this rule exists ... which permits appellate review of an order denying a motion to suppress evidence, notwithstanding a guilty plea." *See id.*; *see also* WIS. STAT. § 971.31(10).

¶12 The State's contention misses the mark. Whether an armed robbery occurred directly connects to the felon in possession charge. That Hooks was in possession of J.W.'s cell phone and cell phone case is evidence of whether Hooks robbed J.W. and is circumstantial evidence of whether Hooks possessed a firearm when he gained possession of J.W.'s items. Moreover, if Hooks's case had gone to trial, the State would have had to present evidence of the armed robbery to show that Hooks was in possession of a firearm. Thus, evidence connecting Hooks to an armed robbery connects Hooks to being a felon in possession of a firearm.

---

[1] WISCONSIN STAT. § 971.31(10) (2017-18) provides:

> An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a final judgment or order notwithstanding the fact that the judgment or order was entered upon a plea of guilty or no contest to the information or criminal complaint.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶13     As to the issue Hooks raises on appeal, he argues that the cell phone and cell phone case "should have been suppressed because the police used unlawfully obtained information to gain the homeowner's consent to search. Specifically, when seeking consent, the police told the homeowner that a gun was upstairs, which they learned from an arrestee following their prior, unlawful entry to the home."

¶14     We review the denial of Hooks's motion to suppress under a two-part standard of review:  we uphold the circuit court's findings of fact unless they are clearly erroneous, but review *de novo* whether those facts warrant suppression. *See Hampton*, 330 Wis. 2d 531, ¶23.

¶15     "The Fourth Amendment to the United States Constitution and art. I, § 11, of the Wisconsin Constitution both protect against unreasonable searches and seizures."  **State v. Phillips**, 218 Wis. 2d 180, 195, 577 N.W.2d 794 (1998). Warrantless searches "are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." **Katz v. United States**, 389 U.S. 347, 357 (1967) (footnotes omitted).  Voluntary consent provides one such exception.  **Id.** at 358 n.22.

¶16     Consent analysis proceeds under a distinct framework if consent was given following some illegal action by police.  Consent, even when voluntary, is not valid when obtained through exploitation of an illegal action by police. *Phillips*, 218 Wis. 2d at 204.  An attenuation analysis examines three factors to determine whether consent is sufficiently attenuated from illegal action to be removed from the taint of illegality:  "(1) the temporal proximity of the official misconduct and seizure of evidence;  (2) the presence of intervening circumstances;  and (3) the purpose and flagrancy of the official misconduct."

*Phillips*, 218 Wis. 2d at 205 (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)). The application of these factors will vary on a case-by-case basis.

¶17 It is important to note, however, that attenuation analysis may not be necessary in all cases. "[A]ttenuation analysis is only appropriate where, as a threshold matter, courts determine that 'the challenged evidence is in some sense the product of illegal governmental activity.'" *New York v. Harris*, 495 U.S. 14, 19 (1990) (citation omitted). If the unlawful police conduct was not a "but-for" cause of the search, attenuation analysis is unnecessary because the consent is not tainted by the unlawful conduct in such a case. *See Hudson v. Michigan*, 547 U.S. 586, 592 (2006).

¶18 The crux of Hooks's argument is that police obtained M.M.D.'s consent by providing her with information obtained from their first illegal entry. Specifically, Hooks contends that police learned from one of the robbery suspects that a firearm was in the residence and then conveyed that information to M.M.D. The circuit court determined, however, that consent was obtained pursuant to information police obtained from the robbery *victim*, not a robbery suspect. The record supports the circuit court's findings. When police first arrived on the scene, J.W. informed them that he was robbed at gunpoint. When police entered the residence the first time and removed the suspects, they did not remove any evidence relevant to any of the charges against Hooks. It was reasonable, then, for the police to assume that a firearm was in the residence prior to their second entry, regardless of any information they may have obtained from the robbery suspects. Accordingly, we need not delve into an attenuation analysis because J.W.'s cell phone and cell phone case were not retrieved "but for" consent obtained pursuant to unlawful police conduct. *See id.* Police already knew to search for a gun at the residence given the reason for their dispatch.

¶19    For the foregoing reasons, we affirm the circuit court.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.